IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

BRANDY SHIPP, )
 )
       Plaintiff, )
 )
v. ) Case No. 07-00953-CV-W-SWH
 )
GfK NOP, LLC, et al., )
 )
       Defendants. )

ORDER

Plaintiff Brandy Shipp filed a wrongful death action against GfK NOP, LLC, Roper ASW, LLC, and Roper Starch Worldwide, LLC,[1] alleging that her mother, Summer Shipp, was last seen alive in Independence, Missouri in December of 2004 where she was working as an independent contractor for the defendants conducting door-to-door surveys. (Petition for Wrongful Death at ¶¶ 6 and 8) On or about October 9, 2007, the remains of Summer Shipp were located along a river in Independence, Missouri. (Id. at ¶ 8) The six-count petition alleges causes of action for negligence (Count I), claims under the Restatement (Second) of Torts (Count II), the special relationship exception (Count III), the special facts exception (Count IV), inherently dangerous activity (Count V) and non-delegable duty (Count VI). Pending before the court is defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) (doc. #12).

---

[1]Two other defendants, Roper Starch Worldwide, Inc. and Roper Starch LLC, were dismissed by plaintiff. (Doc. #22)

1

I. LEGAL STANDARD FOR EVALUATING A MOTION TO DISMISS

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." As the Supreme Court has explained recently:

> Specific facts are not necessary; the statement need only "'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v. Twombly, 550 U.S. —, —, 127 S.Ct. 1955, 167 L.Ed.2d 929, — - — (2007) (slip op., at 7-8)(quoting Conley v. Gibson, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). In addition, when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint. Bell Atlantic Corp., supra, at —, 127 S.Ct. 1955 (slip op., at 8-9)(citing Swierkiewicz v. Sorema N. A., 534 U.S. 506, 508, n.1, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002); Neitzke v. Williams, 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989); Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)).

Erickson v. Pardus, 127 S.Ct. 2197, 2200 (2007).[2] Pursuant to Rule 12(b)(6), dismissal of a claim is appropriate when "it is clear that no relief can be granted under any set of facts that could be proved consistent with the allegations." Frey v. City of Herculaneum, 44 F.3d 667, 671 (8th Cir. 1995)(quoting Hishon v. King & Spalding, 467 U.S. 69, 73 (1984)). The simplified notice pleading relies on liberal discovery rules and summary judgment motions to define disputed facts and to dispose of unmeritorious claims. See Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512-13 (2002). Under the Federal Rules of Civil Procedure, a well-pleaded complaint may proceed even when it appears that it is remote or unlikely that the plaintiff will recover. See Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1965 (2007)(citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

Judged by these standards, the Court concludes that defendants are entitled to the dismissal

---

[2]This Court agrees with the analysis of the United States District Court for the Northern District of Georgia, that "Twombly did not radically alter the elementary rules of civil procedure that have governed litigation in the federal courts for the past seventy years." CBT Flint Partners, LLC v. Goodmail Sys., Inc., 529 F.Supp.2d 1376, 1379 (N.D. Ga. 2007).

of plaintiff's Petition for Wrongful Death.

## II. COUNT I – GENERAL NEGLIGENCE

A cause of action in negligence requires allegations of (1) a legal duty by the defendant to conform to a certain standard of conduct to protect others from unreasonable risks; (2) a breach of that duty; (3) a proximate cause between the conduct of the injury; and (4) damages. See Hoover's Dairy, Inc. v. Mid-America Dairymen, Inc./Special Prods., Inc., 700 S.W.2d 426, 431 (Mo. banc 1985). Defendants contend that generally a party owes no duty to protect another person from the deliberate criminal acts of a third person. See Wright v. St. Louis Produce Mkt., Inc., 43 S.W.3d 404, 409 (Mo. Ct. App. 2001); Irby v. St. Louis County Cab Co., 560 S.W.2d 392 (Mo. Ct. App. 1977).

Plaintiff does not dispute this general proposition, but relies on those cases in which courts have recognized exceptions to this rule arising from the special relationship of the parties or special facts and circumstances. See Wright, 43 S.W.3d at 409-10; Brown v. Van Noy, 879 S.W.2d 667, 671 (Mo. Ct. App. 1994). As to those exceptions, defendants allege that the special facts exception does not apply in this case and the special relationship exception has not been properly pled.

The initial issue before the Court, however, is whether plaintiff is entitled to maintain a general negligence action. In the general negligence claim, plaintiff alleges that "Defendants had a legal duty to use ordinary care to protect decedent Summer Shipp from injuries." (Petition for Wrongful Death at ¶ 16(a)) Plaintiff's only argument with respect to the general negligence claim, Count I, appears to be that:

> [g]iven that the first 14 paragraphs describe the relationship between Summer Shipp and defendants in detail and furthermore that Counts III and IV do specifically allege pleadings under the "special relationship exception to protecting another from criminal acts" and the "special facts exception to protecting another from criminal

acts," dismissal of Count I is unwarranted.

(Plaintiff's Suggestions in Opposition to Defendants' Motion to Dismiss (doc. #20) at 13)  Plaintiff has cited no case that would impose a legal duty on a party to protect another from the criminal actions of a third person absent some special facts or special relationship.  Recovery under those theories has been pled in Counts III and IV of the Petition for Wrongful Death.  Thus, the Court concludes that Count I, alleging a general claim for negligence, must be dismissed.

### III.  COUNT III – SPECIAL RELATIONSHIP EXCEPTION

Defendants also seek dismissal of Count III which alleges that a special relationship existed between decedent Summer Shipp and defendants such that defendants had a duty to take steps to provide for the safety of Summer Shipp.  Defendants acknowledge that case law recognizes a special relationship exists "if a plaintiff can demonstrate that the plaintiff relied on the defendant to provide a place of safety and entrusted her safety to the defendant.  Phelps v. Bross, 73 S.W.3d 651 (Mo. App. E.D. 2002)."  (Suggestions in Support of Defendants' Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) (doc. #13) at 10-11)  However, defendants contend that plaintiff has failed to set forth any allegations that the defendants made any assurances toward Summer Shipp regarding her safety.  (Id. at 12)

In Keenan v. Miriam Foundation, 784 S.W.2d 298, 302 (Mo. Ct. App. 1990), a charitable donor was invited into an area of the defendant's premises to make donations and an employee assured the plaintiff that someone would be in the area to help her and that the area would be "all right." Id. at 304.  The court found that the defendant, by its oral assurances of safety, had assumed the duty to protect the plaintiff from the intentional criminal conduct of unknown third persons and that this assumption of the duty created a "special relationship" between the plaintiff and the

defendant. Id. at 304-05. The court in Keenan cited Nappier v. Kincade, 666 S.W.2d 858, 861 (Mo. Ct. App. 1984), for the proposition that "special relationships" include those in which a party entrusts himself to the protection of another and relies upon that person to provide a place of safety. Keenan, 784 S.W.2d at 302. Such relationships include innkeeper-guest, common carrier-passenger, school-student, and sometimes employer-employee, but do not include landlord-tenant relationships. Id. at 302 (citations omitted).

The Missouri Supreme Court has also recognized that the law may impose a duty on one party to take precautions to prevent injuries to another from the criminal actions of a third party because of the relationship of the parties. See Virginia D. v. Madesco Inv. Corp., 648 S.W.2d 881 (Mo. banc 1983). In Virginia D., the Missouri Supreme Court, citing the Restatement (Second) of Torts, § 314A(1), (2), and 315(a) (1965), found that "[t]here is a special relationship between hotel operators, whom the law has traditionally called innkeepers, and their guests, so as to impose affirmative duties in the protection of persons and property." Id. at 885. This duty extends to those who come to the hotel for food and drink as well as to those renting rooms and also extends to patrons of separately owned and operated eating establishments, where the restaurants are an integral part of the hotel operation and are accessible through the hotel lobby. Id. at 886.

In this case, plaintiff did not plead that defendants voluntarily assumed a duty to protect Summer Shipp from the actions of third persons. Thus, the issue before the Court is whether the special relationship which was pled – i.e. that of independent contractor – is sufficient at this stage of the pleadings to allow the parties to go forward and conduct discovery on this issue.

Plaintiff alleged in the Petition for Wrongful Death that:

> 6. **The Working Relationship.** Prior to December 8, 2004, decedent Summer Shipp was engaged by the corporate defendants for the purpose of doing

door-to-door surveys in Missouri. The exact nature of the working relationship will be revealed during discovery. However, the following things are now known and/or believed to be true in, and around the date of, December, 2004:

- (a) Decedent Summer Shipp was not an invitee on any premises owned by defendants.

- (b) Defendants were not landowners as to any sites where decedent Summer Shipp performed work

- (c) Defendants were not construction contractors at any time relevant hereto.

- (d) Decedent Summer Shipp was not covered by any workers compensation insurance at any time relevant hereto. Defendants did not pay (either directly or indirectly) for workers compensation insurance to cover her.

- (e) This case does not involve any claim by an employee of decedent Summer Shipp.

- (f) Decedent Summer Shipp worked as an independent contractor for defendants under arrangements where the following things were true:

    1. The extent of control, if any, by defendants over decedent Summer Shipp and her work will be revealed and established during discovery.

    2. Decedent Summer Shipp was engaged in a distinct occupation/business. She was free to accept other work and did so.

    3. The type of work being done was usually done by a specialist without supervision rather than under the direction of the employer.

    4. There was skill required in the particular occupation.

    5. Decedent Summer Shipp generally supplied instrumentalities and tools for the work.

    6. Decedent Summer Shipp did have a specific time to complete her performance and was not engaged with an indefinite period of time at issue. She was not required to work specific

hours.

7. Payment was made by the job (not based upon hours worked).

\* \* \*

(g) Decedent Summer Shipp was an independent contractor who was contracted to do a piece of work in the form of surveys.

(h) The duration of time involved in the work did not amount to the hiring of continuing services but rather was the contracting for the completion of a particular job.

(i) Decedent Summer Shipp was a viable economic unit apart from the defendants.

(j) The location where decedent Summer Shipp died was not on any premises owned, leased, or controlled by defendants.

(k) Decedent Summer Shipp's work was incidental rather than in furtherance of the defendant businesses, would not have been performed by employees of the defendant businesses, and was isolated specialty work.

(l) Decedent Summer Shipp worked on the survey as a direct seller.

(m) Decedent Summer Shipp conducted the surveys door to door, was hired for the sole purpose of conducting the surveys and no other tasks, was given little instruction, and never listed herself as an employee of defendants.

\* \* \*

28. A special relationship existed between decedent Summer Shipp and defendants such that decedent Summer Shipp entrusted herself to the protection of defendants and relied upon defendants to provide safety.

29. Defendants therefore had a duty to take steps to provide for the safety of decedent Summer Shipp.

30. Defendants filed in the fulfillment of their legal duty to provide for decedent Summer Shipp's safety by actions and omissions set forth herein with the resultant damages set forth herein.

(Petition for Wrongful Death (doc. #1-2) at ¶¶ 6(a)-(m) and 28-30)

The parties have not cited nor has the Court located any Missouri or Eighth Circuit cases which have held that the independent contractor relationship[3] imposes a duty on the employer to protect the independent contractor from injuries caused by the criminal actions of unidentified third parties. When presented with the issue of what duty was owed to a delivery driver, acting as an independent contractor, who was shot while making deliveries in a high crime area, the court in Koch v. Lind, 698 N.E.2d 1035 (Ohio Ct. App. 1997), affirmed a grant of summary judgment for the hiring party. Relying on Irby v. St. Louis Cab Co., 560 S.W.2d 392 (Mo. Ct. App. 1977), the Ohio court found that the hiring company owed no duty to try to prevent injuries to the driver from the criminal acts of third parties as the injured party was not an employee, but an independent contractor. Koch, 698 N.E.2d at 1043-45.

The Court has examined Missouri law, law from other jurisdictions, as well as the Restatement (Second) of Torts. Section 314A of the Restatement (Second) of Torts sets forth those special relationships which give rise to a duty to protect or aid another and include:[4]

> (1) A common carrier is under a duty to its passengers to take reasonable action
>
> (a) to protect them against unreasonable risk of physical harm, and
>
> (b) to give them first aid after it knows or has reason to know that

---

[3]When a dispute exists as to whether a person was acting as an employee or an independent contractor, that issue is a fact question for the jury. For purposes of ruling on the motion to dismiss, the Court has accepted as true the allegations of the petition concerning the relationship between the parties.

[4]The Institute does not express an opinion as to whether other relationships may impose a similar duty.

> they are ill or injured, and to care for them until they can be cared for by others.
>
> (2) An innkeeper is under a similar duty to his guests.
>
> (3) A possessor of land who holds it open to the public is under a similar duty to members of the public who enter in response to his invitation.
>
> (4) One who is required by law to take or who voluntarily takes the custody of another under circumstances such as to deprive the other of his normal opportunities for protection is under a similar duty to the other.

Section 314B also imposes a duty on an employer to protect an endangered or hurt employee. However, in this circumstance, the employer must know of the imminent danger of harm facing the employee before a duty arises to exercise reasonable care to avert the threatened harm.

Although seeking to come within the special relationship exception, plaintiff has not pled a relationship which case law or the Restatement (Second) of Torts has recognized as creating an exception to the general rule of negligence which does not impose a duty on one party to prevent harm to another from the criminal acts of a third person. Thus, the Court concludes that defendants are entitled to the dismissal of Count III of the Petition for Wrongful Death.

## IV. COUNT IV – SPECIAL FACTS EXCEPTION

Defendants also seek dismissal of Count IV which alleges the existence of special facts which required defendants to take steps to provide for the safety of Summer Shipp. Defendants argue that the special facts exception applies only in two situations, both of which require that the defendant be the landowner of the property on which the injury occurred. (Suggestions in Support of Defendants' Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) (doc. #13) at 12) According to defendants, a duty of protection may arise when a known and identifiable third party causes intentional harm on the property or when there have been frequent and recent violent

9

crimes on the property committed by unknown perpetrators. (Id.) In the circumstances of this case, where there is no known and identifiable third party, plaintiff must be relying on the second theory, known as the "violent crimes" exception. See Miller v. South County Ctr., Inc., 857 S.W.2d 507, 510-11 ( Mo. Ct. App. 1993). Under this exception, although the attacker is unknown, due to prior criminal attacks or acts of violence on the premises, a duty arises to protect invitees to the premises because subsequent attacks are now foreseeable. Id. at 511.

Plaintiff argues that while the case law in this area may refer to the defendant's ownership of the premises, "the case law is much broader and richer than defendants imply." (Plaintiff's Suggestions in Opposition to Defendants' Motion to Dismiss (doc. #20) at 14) Plaintiff cites Wilson v. Altruk Freight Systems, Inc., 820 S.W.2d 717, 722 (Mo. Ct. App. 1991),[5] for the proposition that the term "premises" is not restricted "to premises of which the employer is the owner...." (Doc. #20 at 15) While Wilson rejected an outright ownership test, it did define premises as "any place, under the exclusive control of the employer, where the employer's ususal business is being conducted...." Wilson, 820 S.W.2d at 722. Plaintiff also cites Vann v. Town Topic, Inc., 780 S.W.2d 659, 663 (Mo. Ct. App. 1989), for the proposition that the special facts exception has not been limited to owned premises, but may be applied when the injury occurs "in very close proximity " thereto. (Doc. #20 at 15) However, in Vann, the court concluded that neither the special relationship exception nor the special facts exception created a duty on the part of a restaurant owner to protect his customers from injuries sustained outside the restaurant. The court concluded that "[t]here was no indication that appellant was in any danger while he was in respondent's restaurant and no

---

[5]In Wilson the issue before the court was whether plaintiff was a statutory employee for purposes the Workers' Compensation Act. This determination in part depended on the meaning of the term "premises" as used in Mo. Rev. Stat. § 287.040.1.

allegation that any other crimes of violence had occurred in the past on respondent's premises, in the parking lot or nearby." Vann, 780 S.W.2d at 662.

Even if the special facts exception could be extended to property nearby or adjoining the business owner's premises, there is no allegation that the incident in question occurred on property adjoining that of defendants' premises. In fact, plaintiff alleges that Summer Shipp was not an invitee on any premises owned by defendants, nor were defendants landowners as to any sites where Summer Shipp worked. (See Petition for Wrongful Death at ¶ 6(a) and (b)) Further, plaintiff alleges that the location where Summer Shipp died was not on any premises owned, leased or controlled by defendants. (See Petition for Wrongful Death at ¶ 6(j))

In determining if special circumstances exist which warrant the imposition of a duty of protection from the criminal acts of a third party, Missouri courts have noted that the existence of a duty "is not determined so much by the forseeability of the criminal act, but whether one party is in a superior position to be aware of the danger and to take measures to guard against it." Advance Rental Ctrs., Inc. v. Brown, 729 S.W.2d 644, 646 (Mo. Ct. App. 1987). See also Behrenhausen v. All About Travel, Inc., 967 S.W.2d 213, 219 (Mo. Ct. App. 1998)(even if pattern of violent crime had been established at airport parking facility, travel agency had no control over parking facility, and thus, special circumstances exception would not impose duty on agency to protect traveler from criminal acts of third party).

Plaintiff has alleged that decedent Summer Shipp worked in locations where there were frequent and recent occurrences of violent crimes against persons. (See Petition for Wrongful Death at ¶ 31) Plaintiff further alleged that "[t]here were prior specific incidents of violent crime that were sufficiently numerous and recent to put defendants on notice, either actual or constructive, that there

11

was a likelihood that third persons would endanger the safety of decedent Summer Shipp." (Id. at ¶33) The petition also alleges that the incident causing the injury was sufficiently similar in type to the prior specific incidents that a reasonable person would take precautions against that type of activity. (Id. at ¶ 34) Similar allegations were made and rejected as a basis of liability in Irby v. St. Louis County Cab Co., 560 S.W.2d 392 (Mo. Ct. App. 1977). In Irby, a wrongful death action, a widow sued her husband's employer, a cab company, alleging that the company dispatched the decedent to a high crime area, and thus, had a duty to protect him from the intentional criminal acts of third persons. The court rejected this argument:

> The allegation of a "high crime area" does not ipso facto mandate this duty. Such intentional criminal conduct on the part of unknown third persons is not reasonably forseeable when viewed in the light of common experiences, even in "high crime areas."

Id. at 395.

A review of the applicable case law demonstrates that the special circumstances exception is inapplicable under the circumstances pled in the Petition for Wrongful Death. Thus, Count IV must be dismissed.

V. COUNT II – SECTION 413 and 416 of the RESTATEMENT (SECOND) of TORTS

Count II of the Petition for Wrongful Death sets forth sections 413 and 416 of the Restatement (Second) of Torts and alleges that Summer Shipp was hired as an independent contractor to do work which defendants should recognize as likely to create a peculiar and reasonable risk of physical harm. (Petition for Wrongful Death at ¶ 24) Plaintiff further alleges that defendants failed to provide in the contract that they would take reasonable precautions (id. at ¶ 25), failed to exercise reasonable care to provide in some other manner for the taking of such precautions (id. at ¶ 26) and failed in the fulfillment of their common law duties to Summer Shipp (id. at ¶ 27).

12

Defendants argue that as interpreted by Missouri courts, sections 413 and 416 of the Restatement (Second) Torts only provide exceptions to the general rule that landowners were not liable for injuries to third parties caused by negligent independent contractors. (Suggestions in Support of Defendants' Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) (doc. #13) at 15) Thus, defendants maintain that the sections have no application except in the area of landowner negligence. (Id.) In their reply to plaintiff's opposition to the motion to dismiss, defendants argue that these sections of the restatement apply only to innocent third parties and or employees of an independent contractor. (Doc. #23 at 6) These sections provide the following:

> § 413. Duty To Provide For Taking Of Precautions Against Dangers Involved In Work Entrusted To Contractor
>
> One who employs an independent contractor to do work which the employer should recognize as likely to create, during its progress, a peculiar unreasonable risk of physical harm to others unless special precautions are taken, is subject to liability for physical harm caused to them by the absence of such precautions if the employer
>
> > (a) fails to provide in the contract that the contractor shall take such precautions, or
> >
> > (b) fails to exercise reasonable care to provide in some other manner for the taking of such precautions.

Restatement (Second) of Torts, § 413.

> § 416. Work Dangerous In Absence Of Special Precautions
>
> One who employs an independent contractor to do work which the employer should recognize as likely to create during its progress a peculiar risk of physical harm to others unless special precautions are taken, is subject to liability for physical harm caused to them by the failure of the contractor to exercise reasonable care to take such precautions, even though the employer has provided for such precautions in the contract or otherwise.

Restatement (Second) of Torts, § 416.

While the cases decided under sections 413 and 416 of the Restatement (Second) of Torts

13

most frequently involve landowner issues, this Court need not decide whether these sections could ever apply to a non-landowner situation. Of more significance than whether a landowner is involved, is the issue of who falls within the protected class of "others" referred to in both of these sections. Court are divided over whether employees of independent contractors fall within the term "others" so that they may sue the employer of the independent contractor. See Monk v. Virgin Islands Water & Power Auth., 53 F.3d 1381, 1390-92 (3rd Cir. 1995)(collection of cases). Significantly, the parties have not cited and the Court has not located any case which has included the independent contractor within the protected class of "others." The examples of how these sections might apply, as set forth in the Reporter's Notes to these sections, all involve an analysis of the risks to individuals other than the employer and the independent contractor. Plaintiff has pled that the case does not involve any claim by an employee of Summer Shipp. (See Petition for Wrongful Death at ¶6(e)) Further, plaintiff alleges that Summer Shipp was the independent contractor hired by defendants. (Id. at ¶ 6(f))

The Court finds as a matter of law that Summer Shipp, an independent contractor, does not fall within the category of "others" to whom the protections of sections 413 and 416 are directed. Therefore, defendants are entitled to the dismissal of Count II of the Petition for Wrongful Death.

### VI. COUNT V – INHERENTLY DANGEROUS ACTIVITY

Plaintiff has also sued under the inherently dangerous activity theory alleging:

(a) performance of the contract necessarily involved some inherently dangerous activity;

(b) the activity which caused the damage was reasonably necessary to the performance of the contract and was inherently dangerous.

(c) the one contracting with the independent contractor negligently failed to insure that adequate precautions were taken to avoid damage by reason of the

14

inherently dangerous activity; and

(d) such negligence caused or contributed to cause the death of decedent Summer Shipp and, thereby, plaintiff's damages.[6]

(Petition for Wrongful Death at ¶ 37(a)-(d))

Citing Lawrence v. Bainbridge Apartments, 957 S.W.2d 400, 405 (Mo. Ct. App. 1997), defendants argue that this theory does not provide plaintiff with a cause of action as it is limited to defendant landowners and it provides protection only for innocent third parties or employees of the independent contractor who are not covered by workers' compensation insurance. (Suggestions in Support of Defendants' Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) (doc. #13) at 16) Plaintiff responds that Lawrence was limited to landowner issues and was a case of first impression. Further, plaintiff interprets Lawrence as requiring an analysis of which party is in the best position to avoid the risk and absorb the loss. Thus, plaintiff contends that discovery should go forward so that plaintiff has the opportunity to develop evidence on the issue of which party in this case was better able to avoid the risk and absorb the loss. (Plaintiff's Suggestions in Opposition to Defendants' Motion to Dismiss (doc. #20) at 19)

Generally, a landowner is not vicariously liable for injuries to third parties caused by the negligence of an independent contractor or his employees. Two exceptions have been recognized in Missouri–the landowner control exception and the inherently dangerous activity exception. As none of the defendants were landowners, the Court questions whether this exception has any application to the facts alleged in the Petition for Wrongful Death. However, even if this exception

---

[6]The parties do not address the fact that this theory appears to include the elements of an action under Sections 413 and 416 of the Restatement (Second) of Torts. However, for purposes of this motion, the Court will treat this as a separate theory from that pled in Count II of the Petition for Wrongful Death.

15

could be applied outside of the landowner context, the court in Lawrence concluded that the inherently dangerous activity exception did not apply to an independent contractor who was himself injured while performing the contracted work. 957 S.W.2d at 405. While plaintiff is correct that the court in Lawrence discussed the issue of who could best bear the costs, the court clearly explained that:

> A rule of liability allocating the risk of injury to the independent contractor who performs the work himself advances the objectives of tort law. An independent contractor who knows he will not be compensated by the landowner for his injuries has a strong incentive to take additional care and avoid neglect in performing his duties. This encourages him to demand additional safety measures and compensation before he agrees to undertake an inherently dangerous activity. In addition, it places the independent contractor in the best position to pay for the loss, as he has been previously compensated for it, as is the case where there is workers' compensation coverage. He may use this additional compensation to provide insurance for himself, or simply assume the risk and pocket whatever additional compensation for which he has bargained. He is in the best position to make this decision.
>
> A critical difference between an independent contractor and his employee who is not covered by workers' compensation, is that the independent contractor enjoys a position of bargaining strength and freedom to decide whether the risk involved in a particular job is worth the compensation offered for it. The independent contractor is free to bargain and negotiate without restraint with the landowner. An independent contractor holds himself out as an expert who is uniquely qualified and skilled to bid for and perform the acts in question. As an expert, he is in a better position to understand the risks and costs involved in a particular job and he may demand sufficient remuneration and safety measures to cover what he believes the attendant risks to be. In return for his bargained-for price, he accepts the allocation of the risk.
>
> To allow the independent contractor to recover compensation for his injuries from the landowner in addition to his negotiated price allows for double recovery, if he negotiated a fair price, and allows the independent contractor to be rescued from a bad bargain in the event he failed to negotiate an adequate price. In either case, a rule of liability allowing the independent contractor, who performs the work himself to recover for his own injuries, offends the objectives of tort law because it fails to place the cost on the party in the best position to avoid the risk and absorb the loss.

Lawrence, 957 S.W.2d at 405. The court reached this decision in Lawrence despite the fact that the

independent contractor was a sole practitioner. Id. at 405-06.

For the reasons set forth in Lawrence, defendants are not responsible for injuries sustained by the independent contractor, Summer Shipp, even assuming that the injuries occurred while Ms. Shipp was performing work for defendants. Thus, Count V must be dismissed.

## VII. COUNT VI – NON-DELEGABLE DUTY

Finally, in Count VI of the Petition for Wrongful Death, plaintiff alleges that defendants hired Summer Shipp to perform inherently dangerous work and, thus, had an absolute non-delegable duty to see that all reasonable precautions would be taken during the performance of the work. Plaintiff fails to explain how this theory is different from the inherently dangerous activity theory. Accordingly, defendants are entitled to the dismissal of Count VI of the Petition for Wrongful Death for the reasons set forth in section VI of this opinion.

## VIII. CONCLUSION

For the reasons discussed herein, defendants' Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) (doc #12) is granted. Defendants are entitled to the dismissal of plaintiff's Petition for Wrongful Death in its entirety.

                                                                            */s/ Sarah W. Hays*
                                                                           SARAH W. HAYS
                                                       UNITED STATES MAGISTRATE JUDGE